FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 07, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LISA H.,<br><br>                    Plaintiff,<br><br>          vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | No. 4:18-cv-05009-MKD<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 15, 19 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 19. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's Motion, ECF No. 15, and denies Defendant's Motion, ECF No. 19.

ORDER - 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner

considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§
404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other
work, analysis concludes with a finding that the claimant is disabled and is
therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.
*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to
step five, the burden shifts to the Commissioner to establish that (1) the claimant is
capable of performing other work; and (2) such work "exists in significant
numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2);
*Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On August 14, 2013, Plaintiff applied for Title II disability insurance
benefits and on August 15, 2013, Plaintiff also applied for Title XVI supplemental
security income benefits alleging a disability onset date of July 10, 2013. Tr. 240-
52. The applications were denied initially, Tr. 137-44, and on reconsideration, Tr.
149-59. Plaintiff appeared before an administrative law judge (ALJ) on August 17,
2016. Tr. 43-74. On September 28, 2016, the ALJ denied Plaintiff's claims. Tr.
15-42.

At step one of the sequential evaluation process, the ALJ found Plaintiff
meets the insured status requirements through December 31, 2018 and has not

engaged in substantial gainful activity since July 10, 2013, the alleged onset date. Tr. 20. At step two, the ALJ found that Plaintiff has the following severe impairments: coronary artery disease with history of myocardial infarction status post stent placement; peripheral vascular disease in left lower extremity status post stent placement; degenerative disc disease; and obesity. Tr. 21.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 25. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can stand or walk four hours in an eight-hour workday; sit for six hours in an eight-hour workday; frequently climb ramps or stairs, but never climb ladders, ropes or scaffolds; frequently balance; occasionally stoop, kneel, and crouch; never crawl; avoid concentrated exposure to cold, heat, wetness, humidity, vibration, and hazards, such as moving machinery and unprotected heights; and occasionally reach overhead with the right upper extremity.

Tr. 26.

At step four, the ALJ found Plaintiff is capable of performing past relevant work as an administrative clerk and general ledger bookkeeper. Tr. 32. In the alternative, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as production line sodderer (light), electrical accessories assembler

ORDER - 7

(light), and semiconductor die loader (sedentary).  Tr. 35.  Therefore, the ALJ

concluded Plaintiff was not under a disability, as defined in the Social Security

Act, from July 10, 2013, through the date of the decision.  Tr. 35.

On November 22, 2017, the Appeals Council denied review of the ALJ's

decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for

purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her Title II disability insurance benefits and Title XVI supplemental security

income benefits under the Social Security Act.  Plaintiff raises the following issues

for review:

1.  Whether the ALJ properly considered Plaintiff's impairments at step two;

2.  Whether the ALJ properly evaluated the medical opinion evidence;

3.  Whether the ALJ properly evaluated Plaintiff's symptom claims;

4.  Whether the ALJ properly weighed the lay witness evidence;

5.  Whether the ALJ properly evaluated Plaintiff's impairments at step three;
    and

6.  Whether the ALJ properly incorporated the opined limitations into the
    RFC and evaluated steps four and five.

ECF No. 15 at 6-20.

ORDER - 8

# DISCUSSION

## A. Step Two

Plaintiff contends the ALJ erred by failing to identify a number of conditions as severe impairments at step two. ECF No. 15 at 13.

At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c); 416.920(c). To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508; 416.908 (2010).[1]

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…." Social Security Ruling (SSR) 85-28 at *3. Similarly, an impairment is

---

[1] As of March 27, 2017, 20 C.F.R. § 416.908 was removed and reserved and 20 C.F.R. § 416.921 was revised. The Court applies the version that was in effect at the time of the ALJ's decision.

not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 416.921(a) (2010);[2] SSR 85-28.[3]

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

---

[2] As of March 27, 2017, 20 C.F.R. §§ 416.921 and 416.922 were amended.  The Court applies the version that was in effect at the time of the ALJ's decision.

[3] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 10

At step two, the ALJ concluded that Plaintiff had the severe impairments of coronary artery disease with history of myocardial infarction status post stent placement, peripheral vascular disease in left lower extremity status post stent placement, degenerative disc disease, and obesity. Tr. 21. The ALJ also concluded Plaintiff had the following non-severe impairments: diabetes, hypertension, hyperlipidemia/dyslipidemia, hepatic steatosis, hiatal hernia, osteopenia, history of alcohol dependence, marijuana abuse, and opiate abuse, and depression and anxiety disorders. Tr. 21-25. After detailing the medical evidence pertaining to these impairments, the ALJ concluded these impairments did not more than minimally impact Plaintiff's ability to perform basic work activities. *Id*.

Plaintiff contends the ALJ should have determined the non-severe impairments were severe, as well as the following additional conditions: mild right heart strain, pulmonary emboli, bronchitis, "right shoulder fracture and pain," and "history of recurrent leg thrombosis, claudication, and ischemia." ECF No. 15 at 13. Plaintiff, who bears the burden of proving severity and harmful error, cites no specific evidence or meaningful argument in support of the claim that the ALJ erred at step two. ECF No. 15 at 13-14. Plaintiff has identified no evidence indicating that these conditions more than minimally impact her ability to perform basic work activities. A mere recitation of medical diagnoses does not demonstrate how each of the conditions impacts Plaintiff's ability to engage in basic work

activities.  Thus, Plaintiff has not demonstrated that the ALJ erred.  Moreover,

Plaintiff's contention lacks merit.  As Plaintiff was found to have four severe

impairments, this case was not resolved at step two.  If there was any error in the

ALJ's finding at step two, it is harmless as all impairments, both severe and non-

severe, were considered in the determination of Plaintiff's residual functional

capacity.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  Plaintiff makes no

showing that any of the conditions mentioned creates limitations not already

accounted for in the RFC.  *See Shinseki*, 556 U.S. at 409-10 (the party challenging

the ALJ's decision bears the burden of showing harm).  There was no error in the

step two analysis.

**B.  Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinions of Jesus

Marcelo, M.D., Wayne Hurley, M.D., and Soko Gusic, M.H.P.  ECF No. 15 at 9-

12.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-831 (9th Cir. 1995)).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.' " *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see* 20 C.F.R. § 416.902 (Acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists,

licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants). However, an ALJ is required to consider evidence from non-acceptable medical sources, such as therapists. 20 C.F.R. § 416.927(f).[4] An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion. *Ghanim*, 763 F.3d at 1161.

### 1. Dr. Marcelo

Dr. Marcelo was Plaintiff's longtime primary care physician. Tr. 325 (indicating treatment since 2009); Tr. 1305 (noting treatment in 2010). Dr. Marcelo provided three opinions in 2016. On February 19, 2016, following Plaintiff's examination on the same date, Dr. Marcelo completed a one-page "medical questionnaire" which consisted solely of checking a box stating that he does "not believe that this patient is capable of performing any type of work on a reasonably continuous, sustained basis . . . ." Tr. 818. On a separate physical functional evaluation dated February 22, 2016 that was also based upon the February 19, 2016 examination, Dr. Marcelo opined Plaintiff was capable of

---

[4] Prior to March 27, 2017, the requirement that an ALJ consider evidence from non-acceptable medical sources was located at 20 C.F.R. §§ 404.1513(d), 416.913(d).

sedentary work. Tr. 1218. On August 11, 2016, Dr. Marcelo opined Plaintiff

could perform sedentary work on a sustained, competitive basis, Tr. 1306, but that:

she would need to lie down 30 to 60 minutes during the day due to leg pain, chest

pain, and shortness of breath; she was likely to miss four or more days of work per

month; and work on a continuous basis would cause her condition to deteriorate.

Tr. 1305-06. The ALJ assigned little weight to these opinions. Relying on SSR

96-2p,[5] Plaintiff argues that the ALJ was required to provide clear and convincing

reasons in order to reject Dr. Marcelo's opinions. ECF No. 20 at 3. But because

Dr. Marcelo's opinions were contradicted by examining physician James Opara,

M.D., Tr. 552-56, and state agency consultant Howard Platter, M.D., Tr. 116-18,

131-33, the ALJ was required to provide specific and legitimate reasons for

rejecting Dr. Marcelo's opinions. *Bayliss*, 427 F.3d at 1216.

> i.     August 2016 opinion

The ALJ assigned little weight to Marcelo's opinion that Plaintiff could

perform sedentary work on a sustained, competitive basis; that she would need to

lie down 30 to 60 minutes during the day due to leg pain, chest pain, and shortness

---

[5] SSR 96-2p controlled when the ALJ issued his decision in May 2016 and

therefore governs this Court's review of the ALJ's decision. However, SSR 96-2p

was later rescinded, effective March 27, 2017. 82 Fed. Reg. 57 at 15263.

of breath; she was likely to miss four or more days of work per month; and work on a continuous basis would cause her condition to deteriorate. Tr. 1305-06. First, the ALJ noted that Plaintiff had testified at the administrative hearing that "she discussed the form with him." Tr. 29. At the hearing, the ALJ confirmed that in August 2016, Plaintiff had personally given Dr. Marcello the form to fill out and they had discussed the form and his opinion as to whether he thought she could work. Tr. 55-56. The ALJ's comment insinuates there was an ulterior motive or improper influence behind Dr. Marcelo's medical opinion. The ALJ failed to provide any reason to believe Dr. Marcelo was persuaded to misrepresent Plaintiff's functional ability due to sympathies or patient pressure. This was not a specific and legitimate reason to discount the medical opinion.

Next, the ALJ rejected Dr. Marcelo's August 2016 opinion because it was not explained. Tr. 29. The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d at 957. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record. *Lingenfelter v. Astrue*, 504

F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007).

Moreover, a physician's opinion may be rejected if it is unsupported by the

physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir.

2003).

Here, the ALJ stated "Dr. Marcelo provided no explanation to support his

conclusion that the claimant would miss four days per month versus any other

number of days, or why the claimant would miss any days at all." Tr. 29. This

conclusion is factually inaccurate. As Defendant acknowledges, ECF No. 19 at 6,

Dr. Marcelo's opinion contained narrative explanations throughout, including an

explanation of the reason Plaintiff would be likely to miss four days or more of

work per month indicating: "stress can precipitate chest pain, seizure. Walking can

cause leg pain due to her history of peripheral artery dis[ease] of the leg. Shortness

of breath due to her history of pulmonary thromb[osis]." Tr. 1306. Given the

explanation provided by the treating physician, the ALJ's rejection of the opinion

on the ground that it lacks explanation fails to meet the specific and legitimate

reason standard: it fails to set out an accurate "summary of the facts" and the ALJ's

interpretation of the "conflicting clinical evidence." *Reddick v. Chater*, 157 F.3d

715, 725 (9th Cir. 1998); *see also Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir.

2003) ("We require the ALJ to build an accurate and logical bridge from the

evidence to her conclusions so that we may afford the claimant meaningful review

of the SSA's ultimate findings."). The ALJ failed to recognize and address Dr. Marcelo's stated explanation.

Finally, the ALJ assigned little weight to Dr. Marcelo's August 2016 opinion because it was inconsistent with his opinions rendered in February 2016. An ALJ may properly reject a medical opinion that gives no explanation for deviating from the provider's prior medical opinion. *See Morgan v. Sullivan*, 945 F.2d 1079, 1081 (9th Cir. 1991). Determining that a medical opinion is contradicted by the same doctor's notes, observations, and opinions is "a permissible determination within the ALJ's province." *Bayliss*, 427 F.3d at 1216; *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996) (An opinion itself may provide grounds for suspicion as to legitimacy if it contains inconsistencies with the doctor's own treatment notes).

Here, the ALJ did not explain or analyze the perceived inconsistency; the decision simply states Dr. Marcelo's "opinion here is not consistent with Dr. Marcelo's other opinions as discussed below." Tr. 29. However, the Court notes that Dr. Marcelo's August 2016 opinion that Plaintiff would miss four or more days per month due to her impairments is potentially consistent with Dr. Marcelo's February 19, 2016 opinion that Plaintiff was not capable of performing any type of work on a continuous basis. However, Dr. Marcelo's opinions are inconsistent in that both his August and February 22, 2016 opinions also opined that Plaintiff was

capable of performing sedentary work on a sustained basis. Tr. 1306, Tr. 1218.

This is not "minor," as Plaintiff characterizes the record. ECF No. 20 at 2. Given

that the Court has rejected two of the three reasons offered by the ALJ for

discounting Dr. Marcelo's opinion, this reason, standing alone is insufficient.

Moreover, the Court further notes that the ALJ did not review Dr. Marcelo's

opinions for consistency with the medical evidence, and instead adopted the 2014

opinion of nonexamining physician Dr. Platter and the 2013 opinion of Dr. Opara

rendered at a time Plaintiff's symptoms were characterized as "quite well," Tr. 47,

and prior to Plaintiff's bypass surgery of an occluded artery in her left leg, Tr. 591-

92. The Court remands for reconsideration of the medical evidence.

ii.     February 2016 Opinions

The ALJ also assigned little weight to both of Dr. Marcelo's February 2016

opinions. Tr. 29-30. Given that this matter is being remanded for further

evaluation of Dr. Marcelo's August 2016, the Court directs that the ALJ reevaluate

these opinions as well.

2. *Dr. Hurley*

In December 2013, Dr. Hurley, a medical consultant for the Washington

State Department of Social and Health Services, reviewed a portion of Plaintiff's

medical record and opined she was capable of sedentary work. Tr. 704, 707. The

ALJ assigned little weight to Dr. Hurley's opinion. Tr. 30. Because Dr. Hurley's

opinion was contradicted by Dr. Opara, Tr. 552-56, and Dr. Platter, Tr. 116-18, 131-33, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Hurley's opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ assigned less weight to Dr. Hurley's opinion because "he provided no explanation." Tr. 30. An ALJ may permissibly reject conclusory opinions that do not contain any explanation of the bases for their conclusions. *Crane*, 76 F.3d at 253. The ALJ specifically noted that Dr. Hurley "merely checked a box for sedentary" and the form did not allow Dr. Hurley the ability to assess Plaintiff's functional ability at a higher exertion category with less time standing or walking. Tr. 30; *see* Tr. 704 (defining light level of work as including the ability to stand six out of eight hours and defining the sedentary level to include the ability to walk or stand "for brief periods."). The lack of flexibility allowed by the form pertains more to the form itself than to Dr. Hurley's opinion. Moreover, the quality of explanation is just one factor the ALJ must consider in weighing any medical opinion. Additional relevant factors to evaluating a medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. § 416.927(c)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will

give to that opinion.").  Accordingly, the evaluation of Dr. Hurley's opinion depends on the proper consideration of all the medical evidence, including the consistent opinions of Dr. Marcelo.  Therefore, on remand, the ALJ must reevaluate the medical evidence, including the opinion of Dr. Hurley, and compare the opinion to the longitudinal evidence.

### 3. Mr. Gusic

On August 11, 2016, Mr. Gusic completed a mental RFC assessment opining that Plaintiff was severely limited in her ability to work in coordination with or proximity to others without being distracted by them and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Mr. Gusic also opined that Plaintiff had marked limitations in ten other mental activities and moderate limitations in nine other areas.  Tr. 1308-09.  He further opined Plaintiff had marked difficulties in maintaining social functioning and concentration, persistence and pace, and would likely be off-task over 30% of the time during a 40-hour week schedule.  Tr. 1310.  The ALJ assigned this opinion little weight.  Tr. 32.

As a mental health therapist, Mr. Gusic was not an "acceptable medical source" and the ALJ could reject the opinion by giving reasons germane to the opinion. *Ghanim*, 763 F.3d at 1161.[6]

The ALJ concluded that the assessment "does not provide any explanation" and "merely checked boxes on a form." Tr. 32. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. Individual medical opinions are preferred over

---

[6] Plaintiff refers to Mr. Gusic as "Dr. Gusic" and as a treating physician, and relies on case law regarding the opinions of physicians. Plaintiff contends the record "establishes" that Mr. Gusic has the credentials of medical doctor "with a mental health care focus." ECF No. 20 at 3. However, Plaintiff has not established Mr. Gusic was a treating physician. Mr. Gusic's own handwritten note on his signature line found in his most recent record crosses out the word "physician" and replaces it with "mental health therapist"; he attaches the credentials "MHP" (mental health practitioner) to his printed name. Tr. 1311. At the administrative hearing, the ALJ inquired as to why Mr. Gusic's credentials varied in the record. Plaintiff explained that she was told that Mr. Gusic was a medical doctor in another country, but there were additional requirements necessary for him to complete in order to be a physician in the United States. Tr. 64-65.

check-box reports. *See Crane*, 76 F.3d at 253; *Murray*, 722 F.2d at 501. An ALJ

may permissibly reject check-box reports that do not contain any explanation of

the bases for their conclusions. *Crane*, 76 F.3d at 253. However, if treatment

notes are consistent with the opinion, a conclusory opinion, such as a check-the-

box form, may not automatically be rejected. *See Garrison v. Colvin*, 759 F.3d

995, 1014 n.17 (9th Cir. 2014); *see also Trevizo v. Berryhill*, 871 F.3d 664, 667 n.4

(9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any less

reliable than any other type of form"). Mr. Gusic's form assessment contains no

narrative explanation anywhere on the form, including the designated comment

section. Tr. 1311. The record contains one contemporaneous treatment note from

Mr. Gusic from an initial meeting on February 11, 2016, which does not support

the assessed limitations. Tr. 1128-29.[7] In rejecting Mr. Gusic's opinion, the ALJ

also relied upon the contradicting opinions of acceptable medical sources including

---

[7] It appears from the record that Mr. Gusic was Plaintiff's treating mental health

care provider in 2016. Tr. 63-64. The frequency of treatment is unclear as the

only psychotherapy record from Mr. Gusic included in the administrative appears

to be from an initial meeting on February 11, 2016. Tr. 1128-29; *see also* Tr. 1139

(recommending "brief intervention treatment, psycho education and cognitive

behavioral therapy to manage current issue.").

ORDER - 23

consultative examiner Dr. Marks and reviewing consultants Dan Donahue, Ph.D.

and Renee Eisenhauer, Ph.D. Tr. 30, 32. It was the ALJ's role to weigh this

evidence. *Morgan*, 169 F.3d at 599-600. There is substantial objective medical

evidence conflicting with Mr. Gusic's assessment of the Plaintiff. The ALJ

provided a germane reason to reject Mr. Gusic's opinion. However, because the

Court's remand does not preclude the further development of the record, the ALJ

will need to reevaluate the psychological opinion evidence based upon the

development of the record on remand.

**C. Plaintiff's Symptoms Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting her subjective symptom claims. ECF No. 15 at 16-19.

An ALJ engages in a two-step analysis to determine whether to discount a

claimant's testimony regarding subjective symptoms.[8] SSR 16-3p, 2016 WL

1119029, at *2. "First, the ALJ must determine whether there is objective medical

evidence of an underlying impairment which could reasonably be expected to

_____

[8] At the time of the ALJ's decision in September 2016, the regulation that

governed the evaluation of symptom claims was SSR 16-3p, which superseded

SSR 96-7p effective March 24, 2016. SSR 16-3p; Titles II and XVI: Evaluation of

Symptoms in Disability Claims, 81 Fed. Reg. 15776, 15776 (Mar. 24, 2016).

ORDER - 24

produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas*, 278 F.3d at 958 (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

404.1529(c)(1)-(3), 416.929(c)(1)-(3) (2011). The ALJ is instructed to "consider

all of the evidence in an individual's record," "to determine how symptoms limit

ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of her

symptoms were not entirely consistent with the evidence. Tr. 28.

The ALJ's evaluation of Plaintiff's symptom claims and the resulting

limitations relies in part on the ALJ's assessment of the medical evidence. Having

determined a remand is necessary to readdress the medical source opinions, any

reevaluation must necessarily entail a reassessment of Plaintiff's subjective

symptom claims. Thus, the Court need not reach this issue and on remand the ALJ

must also carefully reevaluate Plaintiff's symptom claims in the context of the

entire record. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because

we remain the case to the ALJ for the reasons stated, we decline to reach

[plaintiff's] alternative ground for remand.").

**D. Lay Evidence**

Plaintiff challenges the ALJ's treatment of statements provided by Lannette Dodson, Plaintiff's daughter. ECF No. 15 at 15-16.

An ALJ must consider the statement of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Lay witness evidence cannot establish the existence of medically determinable impairments, but lay witness evidence is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Id.*; 20 C.F.R. § 416.913; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If a lay witness statement is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen*, 100 F.3d at 1467 (citing *Dodrill*, 12 F.3d at 919).

The ALJ considered Ms. Dodson's Third Party Function Report. Tr. 32, 306-13. Ms. Dodson indicated Plaintiff "is not able to get out of the house and get around," and due to fatigue and pain, she cannot sit or stand for long periods of time and can only walk with five-minute rests every 10-15 minutes. Tr. 311. The ALJ accorded Ms. Dodson's statement little weight. Tr. 32. If the ALJ gives

germane reasons for rejecting testimony by one witness, the ALJ need only point

to those reasons when rejecting similar testimony by a different witness. *Molina*,

674 F.3d at 1114; *see Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694

(9th Cir. 2009) (holding that because the ALJ provided clear and convincing

reasons for rejecting the claimant's own subjective complaints, and because the lay

witness's testimony was similar to such complaints, it follows that the ALJ also

gave germane reasons for rejecting the lay witness's testimony). Here, the ALJ

noted Ms. Dodson's report was "very similar" to Plaintiff's report. Tr. 27

(*comparing* Tr. 297-304 *with* Tr. 306-13) and rejected it in part based on the ALJ's

assessment of the medical evidence. Given the necessity of a remand to reevaluate

the medical evidence and for a new determination as to Plaintiff's symptom claims,

the ALJ must also reevaluate Ms. Dodson's statement and consider what impact, if

any, it has on Plaintiff's RFC.

**E. Step Three**

   *1. Listing 1.04A*

   Plaintiff faults the ALJ for failing to find Plaintiff's condition meets Listing

1.04A, disorders of the spine. ECF No. 15 at 14

   At step three, the ALJ must determine if a claimant's impairments meet or

equal a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

The Listing of Impairments "describes each of the major body systems

ORDER - 28

impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. §§ 404.1525, 416.925. To meet a listed impairment, a claimant must establish that she meets each characteristic of a listed impairment relevant to her claim. 20 C.F.R. §§ 404.1525(d), 416.925(d). If a claimant meets the listed criteria for disability, she will be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The claimant bears the burden of establishing she meets a listing. *Burch*, 400 F.3d at 683.

In order to meet Listing 1.04A, Plaintiff must establish her impairment meets or equals the criteria of 1.04A, which relevantly include: (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain; (2) limitations of motion of the spine; (3) motor loss ("atrophy with associated muscle weakness or muscle weakness") accompanied by sensory or reflex loss, and (4) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.A. *Gnibus v. Berryhill*, No. 2:14-cv-1669 AC, 2017 WL 977594, at *4 (E. D. Cal. March 13, 2017) (finding Listing 1.04A was met) (*citing Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.")). Further, Plaintiff must

establish the impairment satisfies the 12-month durational requirement. *Id*. at *7

(internal citations omitted); *see also Stewart v. Colvin*, 674 F. App'x 634, 635 (9th

Cir. 2017) (Plaintiff failed to carry his burden of establishing that he met all of the

criteria for Listing 1.04A).

The ALJ concluded Plaintiff did not meet Listing 1.04A because the

"medical evidence does not document any evidence of nerve root compression."

Tr. 25. Plaintiff claims the ALJ failed to consider evidence of nerve root

compression contained in the 2015 MRI of Plaintiff's back, and this merits a

remand. ECF No. 15 at 14-15. The ALJ's decision explicitly considered the 2015

MRI, Tr. 31, but concluded the imaging was not "not definitive" of compression.

Tr. 32 (citing Tr. 431, 1150). The MRI report stated there "is *likely* compression of

the left L4 nerve root and *possible* compression of the right L5 nerve root." Tr.

1220 (emphasis added). However, Plaintiff's treating physician interpreted the

MRI as indicating "there is compression of the right L5 nerve root and the left L4

nerve root." Tr. 1150. Defendant claims Plaintiff cannot demonstrate harmful

error, as Plaintiff has not challenged nor demonstrated error in the ALJ's second

finding that Plaintiff "has not had any exams indicative of radiculopathy" as

evidence of motor loss accompanied by sensory or reflex loss. *See Bower v.*

*Astrue*, No. C11-5128-RSM-JPD, 2011 WL 5057054, at *6 (W.D. Wash. Oct.3,

2011) ("[E]ven if the ... MRI showed nerve root impingement, plaintiff would still

ORDER - 30

not meet Listing 1.04(A) due to the lack of documentation of the other criteria of the listing."). Given the necessity of a remand for further proceedings to reevaluate the medical evidence, the ALJ must also reconsider whether Plaintiff's impairment meets or equals the criteria of Listing 1.04A.

  2. *Listings 12.04 and 12.06*

  Plaintiff contends "[p]roper consideration of the medical evidence" warrants a finding that Plaintiff meets or equals Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders) and a determination of disability at step three. ECF No. 15 at 14. On remand, the Court directs the ALJ to reconsider whether Plaintiff meets a listing at step three.

**F. Steps Four and Five**

  Finally, Plaintiff contends the ALJ erred at steps four and five because the ALJ relied upon an RFC and hypothetical that failed to include all of Plaintiff's limitations, including: unscheduled absences more than one day per month; off-task more than 10% of the time; the need for an additional 3- minute break in the both the morning and afternoon; and the need to elevate her leg. ECF No. 15 at 20.

  Because the ALJ's RFC determination contains error, as discussed above, it cannot be relied upon in steps four and five. Therefore, upon remand, the ALJ will make a new RFC determination and new determinations at steps four and five.

### G. Remedy

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 15 at 20.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citations omitted). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the

claimant disabled on remand, the Court will remand for an award of benefits.
*Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  Even where the three
prongs have been satisfied, the Court will not remand for immediate payment of
benefits if "the record as a whole creates serious doubt that a claimant is, in fact,
disabled."  *Garrison*, 759 F.3d at 1021.

Here, unresolved conflicts in the record exist.  It is not clear form the record
that the ALJ would be required to find Plaintiff disabled if all the evidence were
properly evaluated.  Further proceedings are necessary for the ALJ to properly
evaluate the medical evidence, Plaintiff's symptom claims, and the lay witness
statement.  On remand, the ALJ is instructed to allow Plaintiff the opportunity to
supplement the record and render a new decision in accordance with the Court's
instructions herein.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the
ALJ's decision is supported by substantial evidence and free of harmful legal error.
Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 19, is **DENIED**.

3. The Court enter **JUDGMENT** in favor of Plaintiff REVERSING and
REMANDING the matter to the Commissioner of Social Security for further

ORDER - 33

proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED February 7, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 34